HUMPHRIES, Judge.
This is an appeal from an adverse judgment in an “executive officer” suit. We affirm.
*182 The plaintiff brought an action against four employees of Tennessee Gas Transmission Corporation, the same employer for whom the plaintiff worked. He contends that he was injured while attempting to close a heavy metal door on a natural gas line accessory apparatus. The plaintiff claimed that the employer failed to furnish a safe place to work, provide adequate tools and instructions and the other usual contentions made in an action of this nature.
The plaintiff’s injury was brought about by his own actions and not as the result of any defective tools or equipment, lack of a safe place to work, lack of instructions or failure to furnish adequate assistance.
The plaintiff suffered a back injury while attempting to close the metal door that is in the apparatus in an operation that is commonly called a “pig run”. The plaintiff’s injury was incurred in attempting to close a “pig trap” door. A pig run is a procedure whereby an object is run through the natural gas line from one station tp another in order to clean out debris and moisture in the natural gas line. Special apparatuses are constructed in a pipeline that provides for this operation. This apparatus that is run through the lines is called a “pig”. The door closing the ends of the pipeline is called a pig trap door. It is a thick round metal door that screws onto the pipeline on threads in the door and on the outside of the pipe. It is about a foot and a half in diameter. On the outside face of the door are raised metal strips commonly called “ribs” or “ears” that run from the center to the edge. There is a special tool called a “fork wrench” that is used in opening and closing the door. The fork wrench fits over the ribs and pressure on the wrench facilitates the closing or opening of the door. The fork wrench is a special manufactured tool to which the owner, after purchase, adds a 2 to 4 inch “cheater pipe”. A cheater pipe had been added to the fork wrench that was being used by the plaintiff. The door is opened by turning it counter-clockwise and is closed by turning it clockwise.
The accident happened on August 28, 1972. On this date the plaintiff and two fellow employees, John Manuel and Michael Soileau were ordered to go' to this particular station and retrieve the “pig”. Pursuant to regular custom they armed themselves with a fork wrench, a sledge hammer and a ten ton hydraulic jack. Plaintiff and Soileau proceeded on to the site of the destination of the “pig” and John Manuel went to about midway of the line of the run, which was about 16 miles, to listen for the pig to pass. After he heard the pig pass through the line he proceeded to where the other employees were. The plaintiff and Soileau had a most difficult time in opening the pig trap door. They first attempted to open the door with the fork wrench but this failed. Next they attempted to open the door by using the fork wrench and beating on the ribs with the sledge hammer and this failed. Then they placed two 4X4 pieces of lumber on the ground, placed the ten ton hydraulic jack on top of the 4 X 4’s, pumped the jack up to where it caught under one of the ribs and continued pumping on the jack on one side of the door and beating on the ribs on the other side of the door with the sledge hammer, whereupon they were successful in commencing the opening of the door. They opened the door fully but with considerable difficulty. After the door was opened Manuel arrived and he and the plaintiff pulled the pig from the line. Manuel and Soileau then proceeded to put the pig in the truck and do other things that were necessary to get the gas line back into operation and under normal flow. The plaintiff attempted to close the pig trap door. We observe at this time that we are accepting as the facts of the case, the testimony given by the plaintiff in his pre-trial deposition. This deposition was taken by the opposing party and preceded the trial by approximately one year. We are of the opinion that this deposition more nearly reflects actual facts as the an *183 swers were spontaneous and free, not subject to leading, suggestion and summation by his own attorney as was much of the testimony of the trial, and was closer in time to the date of the testimony of the trial, and was closer in time to the date of the accident than was the trial. The plaintiff testified that he put the door back in proper position on the threads and attempted to turn it with the fork wrench. He stated that from the very beginning it was difficult to turn the door. In spite of his knowledge of the difficulty in opening the door and the difficulty in closing the door he still attempted to do it alone and with the use of the fork wrench only. He was closing the door by placing the fork wrench on the ribs to his left and pushing up on the handle of the fork wrench. He stated that while pushing up the door became almost impossible to close and that the last attempt he made it only moved about an inch or an inch and a half and that was when he strained his back. After suffering this strain on his back he stated that the wrench moved slightly to the right but did not slip off of the ribs and that he took the wrench off of the ribs and laid it down. The plaintiff was asked (Tr. 185) the following questions:
“O. Do I understand correctly that you sustained your injury while you were straining to push this thing because it wouldn’t turn for some reason? It was too hard to turn?
A. Yes, sir.
Q. And you didn’t slip or anything like that?
A. No sir.”
The plaintiff further testified: (Tr. 190)
“Q. O.K., but the fact that there was play that didn’t have anything to do with how you hurt yourself did it?
A. Well it had the — I am not definite on this. But it would make the cheater pipe play a lot more when I did get hurt on it. And it might have contributed to the accident. I am not positive.
Q. You don’t know?
A. No sir I am not positive.”
(Tr. 192)
“Q. O.K. Once you came to the sudden stop, you say it went to the right.
A. Yes sir. It didn’t come off. But it did go to the right. And this is— well actually, when it went to the right I believe I had already felt the pain in my back. And I just — I just put the wrench down and I told the other two men that were there that I believed that I had pulled some muscles or something in my — I don’t know what the exact statement was. They were doing some work there also. Which is why they weren’t helping me.
Q. How hard were you pushing while you were moving it ?
A. In that inch and a half distance?
Q. How hard ?
A. (No response)
Q. Were you really straining hard?
A. Yes sir I was.”
After straining his back other employees assisted the plaintiff in closing the door. It was necessary to use the sledge hammer and jack to completely close the door.
The accident to the plaintiff was of his own making and was through no fault of his employer.
The judgment of the trial court is affirmed. The plaintiff is cast for all costs in the District Court as well as on appeal.
Affirmed.